UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| YANGAROO INC., | |
| Plaintiff, | |
| v. | **COMPLAINT** |
| DIGITAL MEDIA SERVICES, INC., DUPLICATION SERVICES, INC., PELCO PRINTS, INC., DUPLICATION HOLDINGS CORPORATION, DUPLICATION SERVICES, LLC, CENTERFIELD CAPITAL PARTNERS, L.P., CENTERFIELD CAPITAL PARTNERS II, L.P., CENTERFIELD CAPITAL PARTNERS III, L.P., SR CAPITAL ADVISORS, LLC, and BDO USA, LLP, | Civil Action No.<br><br>**PUBLIC VERSION<br>FILED MAY 27, 2022** |
| Defendants. | |

Plaintiff, Yangaroo Inc. ("Yangaroo"), by and through its attorneys, Morris James LLP and Phillips Lytle LLP, for its complaint against Defendants Digital Media Services, Inc., Duplication Services, Inc., Pelco Prints, Inc. ("Pelco"), Duplication Holdings Corporation, Duplication Services, LLC,[1] Centerfield Capital Partners, L.P., Centerfield Capital Partners II, L.P., Centerfield Capital Partners III, L.P.,[2] SR Capital Advisors, LLC ("SR Capital"), and BDO USA, LLP ("BDO"), alleges as follows[3]:

---

[1] "DMS" refers collectively to Digital Media Services, Inc., Duplication Services, Inc., and Pelco; and "DMS Defendants" refers collectively to DMS, Duplication Holdings Corporation, and Duplication Services, LLC.

[2] "Centerfield" refers collectively to Centerfield Capital Partners, L.P., Centerfield Capital Partners II, L.P., and Centerfield Capital Partners III, L.P.

[3] "Defendants" refers collectively to DMS Defendants, Centerfield, SR Capital, and BDO.

## THE PARTIES

1. Yangaroo is Canadian corporation with its principal place of business at 67 Mowat Avenue, Suite 535, Toronto, Ontario, Canada M6K 3E3.

2. Digital Media Services, Inc. is a corporation organized under the laws of the State of California with a principal place of business at 10 East 39th Street, New York, New York 10016.

3. Duplication Services, Inc. is a corporation organized under the laws of the State of New York with a principal place of business at 10 East 39th Street, New York, New York 10016.

4. Pelco is a corporation organized under the laws of the State of New York with a principal place of business at 404 Park Ave South, Floor 3, New York, New York 10016.

5. Duplication Holdings Corporation is a corporation organized under the laws of the State of Indiana, with a principal place of business at 10 West Market Street, Suite 3030, Indianapolis, Indiana 46204.  It owns all of the issued and outstanding capital stock of Digital Media Services, Inc., Duplication Services, Inc., and Pelco.

6. Duplication Services, LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business at 10 West Market Street, Suite 3030, Indianapolis, Indiana 46204.  It owns all of the issued and outstanding capital stock of Duplication Holdings Corporation.

7. Centerfield Capital Partners, L.P. is a limited partnership organized under the laws of the State of Delaware with a principal place of business at 10 West Market Street, Suite 3030, Indianapolis, Indiana 46204.

8. Centerfield Capital Partners II, L.P. is a limited partnership organized under the laws of the State of Delaware with a principal place of business at 10 West Market Street, Suite 3030, Indianapolis, Indiana 46204.

9. Centerfield Capital Partners III, L.P. is a limited partnership organized under the laws of the State of Delaware with a principal place of business at 10 West Market Street, Suite 3030, Indianapolis, Indiana 46204.

10. SR Capital is a limited liability company organized under the laws of the State of New York with a principal place of business at 575 Fifth Avenue, 14th Floor, New York, NY 10017.

11. BDO is a limited liability company partnership organized under the laws of the State of New York with a principal place of business at 100 Park Avenue, New York, NY 10017.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this controversy based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

13. The amount in controversy exceeds the sum specified by 28 U.S.C. § 1332, exclusive of interest and costs.

14. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(3) because defendants are subject to jurisdiction in this District.

15. Jurisdiction and venue are also proper pursuant to Section 8.11 of the Asset Purchase Agreement (defined below).

## BACKGROUND

### A. The Asset Purchase Agreement

16. Yangaroo is a software leader in media asset workflow and distribution solutions for advertising, music, and awards industries. It provides work-flow solutions for the media and entertainment industries, and its digital distribution platforms deliver music and videos to broadcasters and other global media outlets.

17. DMS is a digital media distribution, video advertising, and content management delivery business based in New York.

18. In May 2021, Yangaroo purchased substantially all of the assets of DMS, including substantially all of its customer accounts and agreements, pursuant to an Asset Purchase Agreement between Yangaroo and DMS Defendants dated May 19, 2021 (the "APA"). A copy of the APA, including its Exhibits and Disclosure Schedules, is attached as **Exhibit A**.

19. The APA defines ███████████████████████████████
████████████████████████████████████████████████
███████

20. Section 4.16 of the APA concerns ████████████████████████
████████████████████████████

21. In Section 4.16, DMS Defendants represented that ███████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

22. DMS Defendants further represented in Section 4.16 that:

███████████████████████████

23. Section 4.21 of the APA concerns ███████████████ ███████████████

24. Section 4.21(a) of the APA defines a ███████████

███████████████████████████

25. In Section 4.21(a) of the APA, ███████████████ ███████████████████████████

26. Further, in Section 4.21(b) of the APA, ███████████

███████████████████████████
███████████████

---

[4] ███████ is defined in Section 7 of the APA as ███████████ ███████████████████████████

- 5 -

27. DMS Defendants further represented in Section 4.21(b) that ▮

28. The representations, warranties, and disclosures in Sections 4.16 and 4.21 were material terms of the APA because, among other reasons, they impacted Yangaroo's due diligence and valuation with respect to the APA transaction.

29. Section 6.1 of the APA provides, in relevant part, that ▮

30. Section 3.5 of the APA concerns ▮

31. Under Section 7.1 of the APA, ▮

32. Section 3.5 of the APA provides that:

▮

---

[5] ▮ are defined in Section 1.2(b)(ii) of the APA as ▮



33. Section 3.5 is a material term of the APA because, among other reasons, it impacted Yangaroo's valuation with respect to the APA transaction.

34. Section 8.11 of the APA provides, in relevant part, ▮

### B. Verizon and the Verizon Agreement

35. Prior to the execution of the APA, ▮ was one of DMS' most significant customers ▮

36. ▮ A copy of the ▮ is attached as **Exhibit B**.

37. The ▮ provides, in relevant part, that:

███████████████████████████████████████
████████████████████

38. The ████████████ further provides that ████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████

39. Prior to the execution of the APA, DMS Defendants had knowledge of the ████████████ Indeed, former DMS President Jeffrey Louisot ("Louisot") ████████████████████████████████████████████████████

████████████████████████

40. Prior to the execution of the APA, DMS Defendants also possessed a copy of the ████████████████████████

41. Further, prior to the execution of the APA, DMS Defendants knew that ████████████████████████████████████

42. For instance, on or about February 5, 2021, ████████████ ████████████████████████████████████████████████████████████████

████████████████████████

43. Further, in the months leading up the execution of the APA, DMS ████████████████████████████████████████████████

████████████████████

- 8 -

C.  **Defendants Conceal the** ▮▮▮▮▮ **and Information Concerning** ▮▮▮▮▮

44. Defendants intentionally concealed and/or failed to disclose information to Yangaroo concerning ▮▮▮▮▮

45. Defendants, among their other actions or omissions, intentionally (a) failed to disclose ▮▮▮▮▮ to Yangaroo; (b) failed to provide a copy of ▮▮▮▮▮ to Yangaroo; (c) failed to disclose to Yangaroo that ▮▮▮▮▮ (d) failed to disclose to Yangaroo ▮▮▮▮▮ and (e) failed to disclose to Yangaroo ▮▮▮▮▮

46. Upon information and belief, Centerfield and SR Capital are investors, creditors, and/or owners of DMS Defendants.

47. Although Centerfield and SR Capital are not parties to the APA, they are referenced throughout the APA. For example, under Section 8.4 of the APA, ▮▮▮▮▮



48. Upon information and belief, BDO was retained by DMS Defendants to provide consultation and advice with respect to the APA transaction. BDO was involved

throughout the due diligence period of the APA and regularly communicated with DMS Defendants concerning disclosures to Yangaroo.

49. Upon information and belief, DMS Defendants acted in coordination with, and upon the counsel of, Centerfield, SR Capital, and BDO in concealing information concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Yangaroo during the APA due diligence period and after the execution of the APA.

50. For instance, on or about December 21, 2020, Louisot and other DMS executives met with BDO and others regarding due diligence tasks in connection with the APA and the provision of customer contracts to Yangaroo. At that meeting, Louisot and BDO directed DMS's Controller not to provide certain customer information to Yangaroo—including concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—over alleged concerns that Yangaroo was "fishing" for competitive information.

51. BDO was also involved in due diligence conference calls between DMS Defendants and Yangaroo that concerned, among other topics, the provision of customer contracts to Yangaroo.

52. Upon information and belief, Centerfield and SR Capital coordinated with DMS Defendants and/or provided DMS Defendants with advice related to disclosures required under the APA, and were involved in DMS Defendants' decision to conceal information concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Yangaroo.

53. Further, upon the closing of the APA, Louisot was hired by Yangaroo as President, Digital Media Services of Yangaroo.

54. Upon information and belief, DMS Defendants, Centerfield and SR Capital knew that Louisot was employed by Yangaroo following the closing of the APA,

and that Louisot had a duty and obligation as a Yangaroo employee to disclose information to Yangaroo concerning ▮▮▮▮▮▮.

55. Upon information and belief, after the APA transaction closed, DMS Defendants, Centerfield and/or SR Capital continued to coordinate with, direct, and/or advise Louisot—who was then employed by Yangaroo, but was still performing significant unauthorized work for DMS, Centerfield, and/or SR Capital—to conceal the ▮▮▮▮▮▮ from Yangaroo.

56. For instance, on September 28, 2021, Louisot emailed Yangaroo's management regarding a "Transition Plan" to integrate the ▮▮▮ business into Yangaroo. The Transition Plan did not disclose ▮▮▮▮▮▮. To the contrary, the Transition Plan stated that ▮▮▮▮▮▮.

57. On or about October 1, 2021, ▮▮▮ terminated the ▮▮▮ and its business relationship.

## FIRST CLAIM
### (Breach of Contract)

58. Yangaroo realleges the above paragraphs as if fully set forth herein.

59. Yangaroo fully performed under the APA.

60. DMS Defendants breached the APA by, among other actions, making materially false and/or misleading representations and warranties.

61. DMS Defendants represented that ▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (APA § 4.16).

62. The above representation was false and misleading because, among other reasons, (a) ▮▮▮▮▮▮▮▮▮▮ (b) DMS knew that ▮▮▮▮▮▮▮▮▮▮ and (c) DMS ▮▮▮▮▮▮▮▮▮▮

63. DMS Defendants represented that ▮▮▮▮▮▮▮▮▮▮ (APA § 4.21).

64. The above representation was false and misleading because, among other reasons, (a) ▮▮▮▮▮▮▮▮▮▮ (b) DMS Defendants did not ▮▮▮▮▮▮▮▮▮▮ and (c) DMS Defendants did not deliver a copy of the ▮▮▮▮ to Yangaroo.

65. DMS Defendants represented that ▮▮▮▮▮▮▮▮▮▮ (APA § 4.21).

66. The above representation was false and misleading because, among other reasons, ▮▮▮▮▮▮▮▮▮▮

67. DMS Defendants further breached the APA by failing to comply with their obligations under the APA, including their obligations under Section 3.5.

68. ██████████████████████████████████████

69. Upon information and belief, DMS Defendants did not attempt to obtain the consent of ██████ to assign the ██████████████ to Yangaroo.

70. Accordingly, DMS Defendants failed to comply with their obligations under Section 3.5 of the APA to ████████████████████████████████████████████████████████████████

71. Further, DMS Defendants concealed the existence and terms of the ████████████████████████████████████████████████████████████████

72. Accordingly, DMS Defendants failed to comply with their obligations under Section 3.5 of the APA to ████████████████████████████████████████████████████████████████

73. Upon information and belief, the foregoing misrepresentations and/or breaches of the APA were knowing and intentional.

74. As a result of DMS Defendants' breaches of the APA, Yangaroo has suffered damages in an amount to be determined at trial.

## SECOND CLAIM
## (Indemnification)

75. Yangaroo realleges the above paragraphs as if fully set forth herein.

76. Section 6.2(a) of the APA provides, in relevant part:



77. As set forth above, DMS Defendants made false and misleading representations in the APA, breached their representations and warranties in the APA, and materially breached their obligations to Yangaroo under the APA.

78. Yangaroo is therefore entitled to indemnification from DMS Defendants under Section 6.2(a) of the APA in an amount to be determined at trial.

## THIRD CLAIM
## (Fraudulent Inducement)

79. Yangaroo realleges the above paragraphs as if fully set forth herein.

80. As set forth above, Defendants knowingly made false and misleading representations, omissions, and/or actively concealed information that was intended to induce Yangaroo to enter into the APA.

81. Upon information and belief, Defendants' misrepresentations, omissions, and/or active concealment regarding the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ was done, in whole or in part, to ensure that Yangaroo would consummate the APA transaction.

82. Yangaroo relied on Defendants' false and misleading representations and/or omissions to enter into the APA, and such reliance was reasonable.

83. As a result of the fraudulent inducement by Defendants, Yangaroo has been damaged in an amount to be determined at trial.

### FOURTH CLAIM
### (Breach of Fiduciary Duty)

84. Yangaroo realleges the above paragraphs as if fully set forth herein.

85. DMS Defendants have a fiduciary duty to Yangaroo pursuant to the APA, including a duty to disclose material information.

86. DMS Defendants breached their fiduciary duty to Yangaroo by concealing and/or failing to disclose ▇▇▇▇▇▇▇▇▇▇ and information concerning ▇▇▇▇▇ prior to and after the execution of the APA.

87. As a result of DMS Defendants' breach of their fiduciary duty to Yangaroo, Yangaroo has been damaged in an amount to be determined at trial.

### FIFTH CLAIM
### (Aiding and Abetting Breach of Fiduciary Duty)

88. Yangaroo realleges the above paragraphs as if fully set forth herein.

89. DMS Defendants have a fiduciary duty to Yangaroo pursuant to the APA, including a duty to disclose material information.

90. DMS Defendants breached their fiduciary duty to Yangaroo by knowingly and intentionally concealing and/or failing to disclose ▮ and information concerning ▮ prior to and after the execution of the APA.

91. Upon information and belief, Centerfield, SR Capital and BDO knowingly participated and coordinated with, advised, and provided substantial assistance to DMS Defendants in breaching their fiduciary duty to Yangaroo.

92. Upon information and belief, Centerfield, SR Capital, and BDO knew that DMS Defendants' conduct was a breach of its fiduciary duty to Yangaroo and gave substantial assistance and/or encouragement in said breach.

93. As a result of Centerfield, SR Capital, and BDO aiding and abetting DMS Defendants' breach of their fiduciary duty to Yangaroo, Yangaroo has been damaged in an amount to be determined at trial.

### SIXTH CLAIM
**(Tortious Interference with Contract)**

94. Yangaroo realleges the above paragraphs as if fully set forth herein.

95. On or about May 19, 2021, Yangaroo and DMS Defendants entered into the APA.

96. Upon information and belief, Centerfield, SR Capital, and BDO had knowledge of the APA. Although Centerfield and SR Capital are not parties to the APA, they are specifically referenced throughout the APA. Further, BDO was DMS Defendants' accountant in connection with the APA transaction and advised DMS Defendants with respect to due diligence performed in connection with the APA.

97. Upon information and belief, Centerfield, SR Capital, and BDO knowingly and intentionally interfered with the APA, before and after execution of the APA, by among other actions, (a) concealing ▇ and information concerning ▇ from Yangaroo, (b) coordinating with, assisting, or advising DMS Defendants to breach the APA through concealment of ▇ and information concerning ▇ and (c) coordinating with, directing, and/or advising Louisot, while employed by Yangaroo, to conceal ▇ and information concerning ▇ from Yangaroo.

98. Upon information and belief, the actions by Centerfield, SR Capital, and BDO were a significant factor in causing the breach of the APA.

99. Upon information and belief, the actions by Centerfield, SR Capital, and BDO were taken without justification and in order to unjustly enrich Centerfield, SR Capital, and BDO at the expense of Yangaroo by increasing the purchase price paid by Yangaroo in connection with the APA transaction.

100. As a result of Centerfield, SR Capital, and BDO's tortious interference with the APA, Yangaroo has been damaged in an amount to be determined at trial.

### SEVENTH CLAIM
### (Unjust Enrichment)

101. Yangaroo realleges the above paragraphs as if fully set forth herein.

102. In the alternative to the claims alleged above, Yangaroo alleges that it has no adequate remedy at law and brings this unjust enrichment claim.

103. Yangaroo conferred a monetary benefit upon Defendants in the form of the purchase price paid by Yangaroo for the assets of DMS, which included the value of the ▇ business.

104. Defendants had knowledge of the benefits conferred by Yangaroo, and Yangaroo's direct and corresponding impoverishment.

105. Defendants were unjustly enriched at Yangaroo's expense.

106. It is against equity and good conscience to allow Defendants to retain the purchase price paid by Yangaroo because Defendants intentionally misrepresented, omitted, and/or concealed ▓▓▓▓ and information concerning ▓▓▓▓

107. As a result of the foregoing, Defendants have been unjustly enriched at Yangaroo's expense in an amount to be determined at trial.

WHEREFORE, Plaintiff Yangaroo hereby demands judgment against Defendants as follows:

    A. On its First Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

    B. On its Second Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000, plus attorneys' fees and costs;

    C. On its Third Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

    D. On its Fourth Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

    E. On its Fifth Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

    F. On its Sixth Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

  G. On its Seventh Claim, awarding Yangaroo damages in the amount to be determined at trial, but not less than $75,000;

  H. Awarding Yangaroo its attorneys' fees and costs;

  I. Awarding such other relief as the Court deems just and proper.

Dated: Wilmington, DE
   May 19, 2022

MORRIS JAMES LLP

By: _____
David J. Soldo DE # 4309
Attorneys for Plaintiff
~~Yangaroo~~ Inc.
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone No. (302) 888-6950
dsoldo@morrisjames.com

- and -

PHILLIPS LYTLE LLP
Anna Mercado Clark
(pro hac vice to be submitted)
Jeffrey D. Coren
(pro hac vice to be submitted)
One Canalside, 125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
aclark@phillipslytle.com
jcoren@phillipslytle.com

Doc #1560513